## Nickey v. PennDOT

*R. Mark Thomas,* for petitioner.
*George Kabusk,* for PennDOT.

HESS, *J.,* October 19, 1992—The petitioner, Edward H. Nickey, has appealed from the notice of the Pennsylvania Department of Transportation suspending his driver's license for violations regarding the unlawful delivery of marijuana. The notice of suspension arises out of his guilty plea to five violations of the Controlled Substance, Drug Device and Cosmetic Act, which guilty pleas were all entered on the same day, namely, November 18, 1991. The appellant has, thus far, been sent notice of two suspensions, the first for 90 days and the second for one year, which suspensions have been imposed pursuant to 35 P.S. §780-113(m), which provides as follows:

"(m) Notwithstanding any other provision in this Act, any person, not a registrant, who possesses, sells, delivers, offers for sale, holds for sale or gives away any controlled substance, in addition to any other penalty provided in this or any Act, upon conviction for a violation of this Act, shall have his or her operating privilege suspended. The clerk of any court of this Commonwealth, within ten days after final judgment of conviction for violations of this Act requiring suspension under this section, shall send to the Department of Transportation a record of the conviction on a form provided by the Department of Transportation. When the Department of Transportation suspends the operating privilege of a person under this subsection, the duration of the suspension shall be as follows:

"(1) For a first offense, a period of 90 days from the date of suspension.*

---

* 35 P.S. §780-113(m) was amended in 1992 and the first offense penalty changed to six months.

"(2) For a second offense, a period of one year from the date of suspension.

"(3) For a third offense, and any offense thereafter, a period of two years from the date of suspension. Any multiple suspensions imposed shall be served consecutively."

In his initial petition, the defendant appealed from the suspension of his driver's license for a period of one year for a second offense, claiming that the enhanced suspension ought not to have been imposed where he entered pleas of guilty to multiple offenses on the same day. We are satisfied, and have held in a previous case, that the Pennsylvania Department of Transportation may impose consecutive suspensions, enhanced pursuant to the provisions of 35 P.S. §780-113(m), for multiple offenses even though the convictions occurred all on the same day. See *Bilunas v. PennDOT*, 15 D.&C.4th 109 (1991).

At the hearing of the instant case, however, the appellant also complained that he had received no notice that his license would be suspended at the time he entered his pleas of guilty to the various counts of unlawful delivery of marijuana on November 18, 1991. In light of this contention and the recent holding of the Commonwealth Court in *Duffey v. PennDOT, Bureau of Driver Licensing*, 147 Pa. Commw. 280, 607 A.2d 815 (1992), we granted the appellant leave to amend his petition. Hearing on the amended petition was held August 24, 1992. At that hearing, the appellant proffered transcripts of both the guilty plea and sentencing colloquies with respect to the various drug law violations which were the subject of his license suspension. The amended petition, sub judice, avers that the suspension of Mr. Nickey's driver's license, as a result of his guilty plea to five counts of violating the Controlled Substance, Drug, Device and Cos-

metic Act is invalid due to the failure of the court, at the time of the guilty plea, to notify the petitioner that his license would be suspended as a result.

In *Duffey v. PennDOT, supra,* the appellant had been cited for underage drinking, 18 Pa.C.S. §6308(a). His plea of guilty had been entered on June 12, 1990. Some 15 days later, a district justice certified Duffey's conviction to the Department of Transportation and signed an order directing the department to suspend Duffey's operating privileges in accordance with section 6310.4 of the Crimes Code. By notice dated July 24, 1990, PennDOT notified Duffey that his driving privileges would be suspended for a period of 90 days. An appeal was filed from this suspension wherein Duffey contended that his license suspension was improper because the suspension pursuant to section 6310.4 was a penalty that had not been explained to him before his plea of guilty. The court, thus, was confronted with a claim that the license suspension pursuant to section 6310.4 for conviction of various underage drinking offenses was not a collateral civil consequence of that conviction but rather part of the criminal penalty itself.

After considerable discussion, the Commonwealth Court concluded, in *Duffey,* that a license suspension under section 6310.4 of the Crimes Code is not properly characterized as a collateral civil consequence of a criminal conviction but rather is part of the sentence. This conclusion was reached, in part, because the license suspension pursuant to section 6310.4 is not the act of an administrative agency over which the judge and the criminal court has no control but, rather, results from the order of a judge or district justice to suspend the license pursuant to the conviction.

There is, of course, in 35 P.S. §780-113(m) no provision directing suspension of the defendant's license by court

order. Rather, the Clerk of Courts, within ten days after final judgment of conviction, sends to the Department of Transportation a record of the conviction on a form provided by the Department of Transportation. PennDOT argues that, because it is a notice of a record of a drug conviction which triggers the suspension rather than an order of court, *Duffey* has no application to this case. Thus, according to PennDOT, we are bound to follow the general rule that a license suspension is a collateral civil consequence and that there is no requirement that the defendant be informed of this potential collateral consequence at the time of his plea.

We note, however, that in the cases cited by PennDOT, none of the guilty pleas were to offenses other than vehicle code violations. Suspensions for vehicle code violations are, of course, generally triggered when notice of conviction is forwarded to the DOT by agents of the court or minor judiciary. The Department of Transportation contends, in the instant case, that because the same notice procedure is followed in drug cases as in motor vehicle code cases, the suspension of the violator's license is a civil collateral consequence and not a penalty imposed by the court. This contention misses the fundamental point made in *Duffey.*

At the heart of the decision in the *Duffey* case, we believe, is the court's appreciation of the imposition of a license suspension where the underlying offense is for a violation of the law other than the vehicle code. Citing from the Legislative Journal of the House of Representatives, the *Duffey* court concluded that the House debate indicated that the legislature intended to mandate "a license suspension as the direct penalty for certain alcohol related offenses, regardless of whether a vehicle was involved." *Duffey, supra* at 287, 607 A.2d at 818. The intention of the legislature to mandate license sus-

pension as a direct penalty is equally clear in this case where the suspension results from certain drug related offenses, which do not require, as an element, the operation of a motor vehicle.

We are dealing with a case where the potential suspensions of the petitioner's driver's license will exceed seven years. As we have already noted, this suspension results from violations of the drug law having nothing to do with the defendant's operation of a motor vehicle. With the exception that the suspension of the driver's license for underage drinking takes the form of an "order" on a PennDOT form, we see no reason why the basic principles in *Duffey* should not apply equally to drug cases as to underage drinking cases. In these regards, the *Duffey* court noted, in pertinent part:

"The defendant, maintaining that his loss of license is a direct criminal penalty, appealed to Superior Court, which has jurisdiction over appeals from most criminal convictions, see section 742 of the Judicial Code, 42 Pa.C.S. §742, but Superior Court transferred the case to this court because it involves a civil license suspension appeal. If this court were to reject the defendant's claims on the grounds of collateral attack and inform him that his only remedy is to seek allowance of appeal nunc pro tunc from the Court of Common Pleas, we would be endorsing the extraordinary result that a criminal defendant's right to appeal his conviction and sentence may be exercised only by way of a possible appeal nunc pro tunc, perhaps months after the original conviction.

"Acknowledging and giving effect to the legislative intent eliminates all of these problems. The guilty plea, even to a charge of a summary offense initiated by the issuance of a citation, must be made 'voluntarily and understandingly.'" Pa.R.Crim.P. 59. For that to be the case, *all* of the direct penalties must be explained on the citation

form or by the court before whom the defendant appears, not merely the possible monetary penalty. *Commonwealth v. Leonhart,* 358 Pa. Super. 494, 517 A.2d 1342 (1986), *petition for allowance of appeal denied,* 515 Pa. 620, 531 A.2d 428 (1987); *Commonwealth v. Reagan,* 348 Pa. Super. 589, 502 A.2d 702 (1985). Upon the defendant's conviction, following a plea of guilty or a trial, the court or district justice must impose the mandatory sentence and order suspension of the defendant's license, but the court may not omit notice to the defendant of the sentence....

"When the district justice accepted Duffey's guilty plea to the *criminal offense* of underage possession of alcoholic beverages, without first informing him of the mandatory criminal penalty of license suspension, that was a violation of his right to due process, which, at a minimum, invalidates the plea. Also, the imposition of the *criminal penalty* of license suspension without notice of the sentence and the failure to advise of any right to appeal the *criminal conviction* pursuant to Pa.R.Crim.P. 86 constitute further violations of due process. These violations render the sentence of license suspension imposed upon Duffey invalid, and they warrant the sustaining of his appeal.

"The principle that we must recognize is that a license suspension imposed pursuant to 18 Pa.C.S. §6310.4 is the mandatory *criminal sentence* upon conviction of underage drinking, and a defendant must be afforded all normal criminal procedural protections in relation to that sentence, including *notice* that suspension will result before a plea of guilty may be valid, *notice* at the time of conviction and sentencing that a suspension will be imposed and *notice* to the defendant of his right to appeal

from the conviction and sentence pursuant to the Rules of Criminal Procedure." *Id.* at 290-92, 607 A.2d at 820-21. (emphasis supplied)

The defendant in this case was not involved in the comparatively minor summary offense of underage drinking or possession of alcohol. His were pleas of guilty to serious felonies. The Rules of Criminal Procedure, with respect to the acceptance of guilty pleas, are the same, however, for court cases as for summary cases insofar as they require the judge to ascertain that a plea is "voluntarily and understandingly" tendered. Pa.R.Crim.P. 319. Obviously, an understanding of potential consequences of the plea is no less important in felony cases than in summary matters.

### ORDER

And now, October 19, 1992, the within petition for appeal from license suspension, as amended, is granted and the suspensions of appellant's operator's license vacated.